HAMILTON S. BATTIN, complainant-respondent,

*v.*

JENNIE MAE BATTIN and LAMBERT EARLE BATTIN, defendants-appellants.

[Argued November 24th, 1922.  Decided March 5th, 1923.]

On appeal from the court of chancery advised by Vice-Chancellor Griffin, who filed the following opinion:

"The complainant in this cause filed his bill for partition. An interlocutory decree was taken against all of the defendants and there was the usual reference to a special master to report.  The master reported the various interests of the parties, and 'that the provisions of the last will and testament of Lambert B. Battin, deceased, giving to the said Jennie Mae Battin the use of said premises for her lifetime and the supervision thereof are valid and in full force and are binding on all parties to this suit.'  The will is quite ambiguous, and various parts are contradictory and repugnant.  In the case of *Den* v. *Gifford, 9 N. J. Law 46* (at *p. 50*), Chief-Justice Ewing, in discussing a will, said: 'It is not unworthy of remark that, filled as our books are with reports on wills, no case has been found presenting a similar devise and showing its just construction.  The fact furnishes another illustration of the never-ending variety of litigation with which the wit and wisdom or the ignorance and folly of mankind are likely to supply the tribunals of justice.'  The same remarks might aptly be applied to the will in this case.

"I have gone over the will a number of times and examined it in its entirety from almost every possible angle and viewpoint.  The testator made his will on the 19th of September, 1906, at which time he had the property described in the bill

and known as 'The Anchorage,' a residence at Elizabeth, and other property. By a codicil dated the 31st of August, 1916, he gave to his widow, Jennie Mae Battin, substantially all of the property of which he died seized excepting 'The Anchorage.' In the third paragraph of his will he gives, devises and bequeaths to his wife, in lieu of dower, an equal share with all of his children in all of the real and personal estate of which he may die seized. He then makes provision for the maintenance of the home out of the income derived from a trust estate left by his father, as well as from that which he owned independently. He then provides that, in case his widow and children do not live harmoniously together, a majority of his executors shall decide the management of his home and personal property. He then adds the following clause at the foot thereof: 'My widow and any unmarried child shall have a home at "The Anchorage," Fairhaven, New Jersey.'

"He had no power to provide for the use of the income of the trust estate, because, on his death, that passed to the children, and the only property which he had at the time of the making of his will was 'The Anchorage' and the property which he afterwards devised and bequeathed to his widow by the codicil, and perhaps some other property which he disposed of between the making of his will and his death. Therefore, when he died there was no property devised or bequeathed the income of which might be used for the maintenance of the home.

"By the fourth paragraph he makes some specific bequests to certain of his children.

"By the fifth paragraph he devises and bequeaths all the rest, residue and remainder of his property, real and personal, to his wife and six children, in fee, share and share alike.

"Plainly, by the third and fifth paragraphs, a fee-simple was devised in 'The Anchorage' to the wife and six children. (I may add that all of the children, excepting Lambert, are children by a former wife.) At the end of the sixth paragraph, after saying that the whole income shall be devoted, as at present, to the maintenance of his home at 'The An-

chorage' at Fairhaven, New Jersey, he says: 'It is my will that no real estate shall be sold or mortgaged without the consent in writing of each of my executors and executrices,' and he appoints his .wife and six children executors.

"The first question I will consider is the latter clause, which requires the consent in writing of the executors to a sale. By the terms of the will a fee is granted 'o the wife and six children as tenants in common. In the third and fifth paragraphs of the will, this latter clause requiring consent I consider void as being repugnant to and derogating from the devise. *Kreuger* v. *Frederick, 88 N. J. Eq. 259; Potter* v. *Couch, 141 U. S. 297* (at *p.. 315*); *11 Sup. Ct. Rep. 1005* (at *p. 1010 col. 2; p. 1011 col. 1*).

"The next question to be considered is whether the will, particularly the language at the foot of the third clause, 'My widow and unmarried child shall have a home at "The Anchorage," Fairhaven, New Jersey,' prevents a partition? It is plain that this language is permissive and personal— permissive in the sense that she need not make her home there if she does not so desire; and second, that it is personal to her and her unmarried child, to whom only the personal use may be had without authority to rent the property. *Endicott* v. *Endicott, 41 N. J. Eq. 98, 99.* If she has abandoned the place as a home the bill for partition is maintainable. In her testimony Mrs. Battin says, 'I now live— board—at 139 Monmouth Street, Red Bank, N. J., and have lived there two years.' She lived occasionally at 'The Anchorage'—lived there five months after her husband died, and has lived in Red Bank ever since. She lived at 'The Anchorage' five weeks this fall (1920). She contends in her testimony that she has a life estate in 'The Anchorage.' The building is erected on an acre and a half and contains fifteen rooms, a hall, a large attic and a bath, with a sixty-foot stable, a poultry-house and two small outbuildings. She collected $450 for rental on 'The Anchorage.'

"It is perfectly plain that she has not a life estate; she merely has an option of user. During the period from her husband's death in 1918 she lived in the house for about five

months after her husband's death, and for two years thereafter she did not make her home there, and even since this suit was started she has but occasionally lived there for periods, the longest period being six or seven weeks. It is quite apparent from her story that her husband was a man of some means, having a city residence and 'The Anchorage' as a country residence, and that it would be impossible for Mrs. Battin to maintain this large establishment as a home. Her theory is that she has a life estate and may rent the same. This, as above indicated, is incorrect. I am satisfied from the evidence that 'The Anchorage' is not her *bona fide* home, that she has not been using it as such and that her home is at Red Bank.

"She also appears to claim that no distribution may be made during her lifetime, under the sixth paragraph of the will. This distribution has reference only to the property outside of 'The Anchorage,' because it says 'the whole income' (which can only mean the income outside of 'The Anchorage') is to be devoted, as at present, to the maintenance of my home known as 'The Anchorage.'

"As a result of the foregoing views, the exceptions will be sustained, but no part of the report will be stricken out, because it is part of the record.

"As to the seventh exception, which holds that Jennie Mae Battin is entitled to receive from Hamilton S. Battin the fair rental value of the premises occupied by him from the date of the death of his father, this exception will be sustained; but the question arises as to whether Hamilton should not pay to the estate the fair rental value. Of course, there was no ouster, as far as I can see, and, as I recall the law, one tenant in common may occupy a portion of the premises without paying rent, unless he excludes the other tenants from the use thereof. I reach this conclusion the more readily in view of the fact that it appears that the premises are running down, and are likely, unless properly occupied and maintained, to go into decay.

"A decree will be advised in accordance with the foregoing views."

*94 N. J. Eq.*                    Battin *v.* Battin.

*Mrs. Mary Wooster Sutton,* for the appellants.

*Mr. Charles E. Hendrickson,* for the respondent.

PER CURIAM.

We have examined the record in this case, with the result that we have reached the same conclusion as the learned vice-chancellor, who advised the decree in which the respective rights and interest of the parties in the premises are ascertained and adjudged. Also, the bill filed for a partition and a decree of sale of the premises should be sustained.

. The decree of the court of chancery is therefore affirmed.

*For affirmance* — THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, BLACK, KATZENBACH, WHITE, GARDNER, ACKERSON, VAN BUSKIRK—11.

*For reversal*—None.